**EVERGREEN REVIEW, INC., Plaintiff,**

v.

**William CAHN, District Attorney, County of Nassau, State of New York, Defendant.**

**No. 64–C–441.**

United States District Court
E. D. New York.

June 11, 1964.

Rembar & Zolotar, New York City, for plaintiff; Charles Rembar, New York City, of counsel.

Jack B. Weinstein, County Atty., County of Nassau, for defendant; Stephen W. Schlissel, Deputy County Atty., William D. Siegel, Asst. County Atty., Louis J. Lefkowitz, Atty. Gen., of the State of New York, Philip Kahaner, Asst. Atty. Gen., of counsel, for defendant.

Before HAYS, Circuit Judge, and ROSLING and BARTELS, District Judges.

PER CURIAM.

The complaint in this action, brought under the Federal Civil Rights Law (42 U.S.C. § 1983), attacks as unconstitutional the seizure by the District Attorney of Nassau County under Sections 1141 and 1144 of the New York State Penal Law, McKinney's Consol.Laws, c. 40, of approximately 21,000 copies of the magazine "Evergreen Review" claimed to be obscene and pornographic. It seeks injunctive relief, damages and a declaratory judgment of unconstitutionality, and states that the action is to be tried and determined by a three-judge court pursuant to Sections 2281 and 2284, 28 U.S.C. Upon plaintiff's application the District Judge ordered defendant to show cause why he should not be directed to return the seized copies of plaintiff's magazine and be enjoined during the pendency of this action from interfering with the manufacture, distribution or sale thereof, and pending the determination of this application, temporarily restrained defendant from disposing of the copies of the magazine. During the argument before the three-judge court defendant filed a comprehensive motion

to dismiss the complaint, dissolve the three-judge court and stay the proceedings until the outcome of certain criminal actions now pending in the State courts. The Attorney General of the State of New York also appeared and joined in defendant's motion. Subsequently, the defendant and the Attorney General filed briefs in support of this motion, which were duly considered.

### Facts

On April 24, 1964, Albert C. Anderson, a detective in the Nassau County Police Department assigned to the District Attorney's Squad, submitted an affidavit [1] to a Nassau County Judge predicated upon information furnished him by "a confidential informant" employed on the premises of Corydon M. Johnson Co. Inc., where the magazine "Evergreen Review" was being bound, to the effect that she had informed Anderson that while working in the bindery she observed black and white photographs in the magazine "Evergreen Review" "which showed nude human forms, possibly male and female, but reputed by fellow workers to be two females, and that the forms portrayed various poses and positions indicating sexual relations", and that the printed material accompanying the photographs consisted of four lettered obscene language. "Based upon the foregoing reliable information", Anderson concludes, "there is probable cause to believe that obscene, indecent and pornographic magazines" are being used or possessed with intent to be used for the purpose of committing a crime in violation of Sec-

---

[1] The text of the affidavit is as follows:

"I am a Detective in the Nassau County Police Department, assigned to the District Attorney's Squad.

"That on April 24th, 1964 a confidential informant related the following information to me at the Office of the District Attorney of the County of Nassau, New York.

"That my informant had been employed at the premises doing business as CORYDON M. JOHNSON CO. INC. which is located on Route 107, Hicksville Road, Bethpage, County of Nassau, New York, and was working in the department for final preparation of binding for magazines. My informant further stated to me that a magazine using the name 'EVERGREEN' was being prepared for completion and that while working my informant observed black and white photographs in the magazine which showed nude human forms, possibly male and female, but reputed by fellow workers to be two females, and that the forms portrayed various poses and positions indicating sexual relations. My informant further stated having read portions of the printed material accompanying the aforesaid photographs and described the printed matter of consisting of four lettered obscene language.

"In addition my informant further stated to me of having seen such publications as PLAYBOY and similar magazines and stated there was no comparison between them. Further that one of the bosses of the premises made the statement, in the presence of my inform-ant, that three thousand of the magazines were to be completed in one day.

"My informant also stated that the aforesaid location has employed on a part time basis, students of high school age, who handle the magazine in question in connection with their work.

"Based upon the foregoing reliable information there is probable cause to believe that obscene, indecedent and pornographic magazines, using the name 'EVERGREEN' have been used or are possessed with intent to be used as the means of committing a crime, to wit: Violation of Section 1141 of the Penal Law of the State of New York and are being concealed within the premises doing business as CORYDON M. JOHNSON CO. INC. located at Route 107, Hicksville Road, Bethpage, County of Nassau, New York, occupied by JOHN DOE.

"WHEREFORE, I respectfully request that the Court issue a Warrant and Order of Seizure, in the form annexed, authorizing the search of the premises doing business as CORYDON M. JOHNSON CO. INC. located at Route 107, Hicksville Road, Bethpage, County of Nassau, New York and directing that if such property or evidence or any part thereof be found that it be seized and brought before the Court; together with such other and further relief that the Court may deem proper.

"No previous application in this matter has been made in this or any other Court or to any other Judge, Justice or Magistrate."

tion 1141 of the Penal Law. Upon this affidavit the County Judge issued a warrant pursuant to Section 1144 of the Penal Law[2] that there was "probable cause for believing that certain property has been used or is possessed with intent to be used as the means of committing a crime, to wit: Violation of Section 1141 of the Penal Law of the State of New York", authorizing a search of the bindery and a seizure of such property which "may have been delivered for indecent, obscene and pornographic magazines using the name 'Evergreen'" and to bring such property before the court. Pursuant thereto, seizure of approximately 21,000 copies of the magazine was made on the same day by three County detectives. According to the affidavit of the managing editor, said 21,000 copies together with 4,000 copies previously mailed to subscribers, comprised the entire print run of the April-May 1964 issue.

■ After the seizure and the initiation of this action, Anderson in a subsequent affidavit, sworn to May 16, 1964 and filed in support of the defendant's motion, stated that after reading his affidavit the County Judge questioned him "with respect to the source and nature of my information" and then decided the affidavit was sufficient for a search warrant. He further explains therein how the seizure occurred and states that on April 24th he proceeded to the bindery with two other detectives and a search warrant and then seized two copies of the magazine and returned to the District Attorney's office with said copies but leaving the other detectives on the premises of the bindery. He adds that the

District Attorney then read the magazine[3] and ordered Anderson to draw up an information alleging violation of Section 1141 of the Penal Law and to present the same to a District Judge; that upon such presentation the same Nassau County Judge on the same day read the magazine and decided that it was pornographic and thereupon authorized the information against the plaintiff, its officers, Barney Rosset and Richard Seaver, and against Pegasus Press, Inc., the company printing the magazine, and its president, George Haralampoudis, and that warrants of arrest (not of seizure) were then issued by another judge against the alleged offenders. Upon execution of the arrest warrants, copies of the magazine were loaded upon vehicles and delivered to the Property Clerk of the Police Department. Anderson's affidavit of April 28th, filed before this action, states that upon execution of the April 24th warrant "Approximately Twenty One Thousand (21,000) bound and unbound copies of magazines known by the name 'EVERGREEN'" were seized "under and pursuant to the warrant". Criminal actions are now pending in the District Court of Nassau County against George Haralampoudis and Pegasus Press, Inc.

In support of the defendant's motion to dismiss and for other relief, Henry P. Devine, Chief of the Law and Appeals Department of the Nassau County District Attorney's office, filed an affidavit, sworn to May 15, 1964, stating that he had read Anderson's affidavit of May 15th and that "The procedure he [Anderson] describes was the procedure used by

2. Section 1144 provides in part that "A magistrate having jurisdiction to issue warrants in criminal cases, upon complaint that any person within his jurisdiction is offending against the provisions of this article, supported by oath or affirmation, must issue a warrant, directed to the sheriff or to any constable, marshal, or police officer within the county, directing him to search for, seize, and take possession of any of the articles specified in this article, in the possession of the person against whom complaint is made. The magistrate must immediate-

ly transmit every article seized by virtue of the warrant, to the district attorney of the county, who must, upon the conviction of the person from whose possession the same was taken, cause it to be destroyed, and the fact of such destruction to be entered upon the records of the court in which the conviction is had."

3. A search warrant gains no support from investigations and observations after it is signed. Tripodi v. Morgenthau, S.D. N.Y.1962, 213 F.Supp. 735; United States v. Sims, M.D.Tenn.1962, 201 F.Supp. 405.

502

the District Attorney's office of the County of Nassau in this case" and "conforms, generally, to the practice of the District Attorney's office when complaints are received by the members of the District Attorney's staff, or by members of the Police Department where notice is given to the District Attorney's office".

The issues before this Court are (1) whether plaintiff's demand for an injunction to restrain the enforcement by the defendant of Sections 1141 and 1144 of the New York Penal Law by seizure of 21,000 copies of plaintiff's magazine, falls within the jurisdiction of a three-judge court as provided by Section 2281 of Title 28 of the United States Code and (2) if so, whether such application of said sections based upon a judge's warrant prior to the determination of the issue of obscenity, violates plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments.

## I

 The threshold question to be decided is whether the three-judge court was properly invoked. Since Section 2281 procedure dislocates the normal operations of the Federal courts, the statute must be strictly construed according to its terms. It is not to be invoked to restrain the lawless exercise of authority by a state official in a unique or particular case, Phillips v. United States, 1941, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800; Penagaricano v. Allen Corporation, 1 Cir. 1959, 267 F.2d 550; nor when the controversy involves merely the construction of a state law, see Kesler v. Department of Public Safety, etc., 1962, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641; nor when the constitutional question is no longer open, Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512. As remarked in Ex parte Bransford, 1940, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249, it is necessary to distinguish between a petition which seeks an injunction on the ground of unconstitutionality of the result obtained by use of a statute not attacked as unconstitutional and a petition for an injunction on the ground of unconstitu-

tionality of a statute as *applied*. Only the latter requires a three-judge court. Accordingly, if the complaint alleges a basis for equitable relief based upon unconstitutionality of a statute as applied, a single judge may not grant or withhold relief but must invoke the statutory court. Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794. These criteria have certainly been satisfied here and the three-judge court was properly invoked.

## II

In the interest of clarity, it should be stated that the plaintiff does not, in effect, assail the legislation insofar as it outlaws obscene and pornographic material and this issue is really not before this Court. In fact, the statute on its face is not unconstitutional. The attack in this case is against the power of New York State to adopt a scheme of enforcing the prohibitions of Section 1141 by the methods set forth in Section 1144 as applied by the District Attorney.

 The protection of freedom of press and speech provided by the First Amendment has by many classic decisions of the Supreme Court been made applicable to the States by the due process clause of the Fourteenth Amendment. See Near v. State of Minnesota ex rel. Olson, 1931, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357; Smith v. People of State of California, 1959, 361 U.S. 147, 80 S. Ct. 215, 4 L.Ed.2d 205, rehearing denied, 1960, 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed. 2d 383. In a similar manner the search and seizure prohibition of the Fourth Amendment has been applied to the States. Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, rehearing denied, 1961, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72. Freedom of press and speech is jealously guarded and "The door barring federal and state intrusion into this area cannot be left ajar". Roth v. United States, 1957, 354 U.S. 476, at 488, 77 S.Ct. 1304, at 1311, 1 L.Ed.2d 1498. The cases recognize that this freedom, however, is not absolute. For instance, obscenity "is not within the area

of constitutionally protected speech or press." Roth v. United States, supra, 354 U.S. p. 485, 77 S.Ct. p. 1309; Alberts v. State of California, 1957, 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Near v. State of Minnesota ex rel. Olson, supra, and the publication of such material may be regulated by the States. In enforcing such regulations, the State is not limited "in resorting to various weapons in the armory of the law." Kingsley Books v. Brown, 1957, 354 U.S. 436, 441, 77 S.Ct. 1325, 1328, 1 L.Ed.2d 1469.[4] But such regulations must provide safeguards to prevent the denial of freedom of speech and press since no State has the power to restrict the dissemination of non-obscene publications. Smith v. People of State of California, supra.

 Very much in point is Marcus v. Search Warrants of Property, etc., 1961, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed. 1127, where a number of books and publications allegedly obscene, were seized pursuant to warrants issued to peace officers under a Missouri statute by a magistrate upon a sworn complaint that obscene material was kept in certain places and commanding the officers to bring such material before the magistrate. The proceeding was *ex parte*, as here, and although the obscene material was not identified, a hearing was required to be held within twenty days for the purpose of determining whether the material was obscene. Holding that such mass seizure without any safeguards to protect legitimate expression was in violation of the Fourteenth Amendment which infected the entire proceeding, the court said:

"'* * * The separation of legitimate from illegitimate speech calls for * * * sensitive tools * *.' Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech." (367 U.S. p. 731, 81 S.Ct. p. 1716)

and again

"Kingsley Books does not support the proposition that the State may impose the extensive restraints imposed here on the distribution of these publications prior to an adversary proceeding on the issue of obscenity, irrespective of whether or not the material is legally obscene." (367 U.S. pp. 735–736, 81 S. Ct. p. 1718).

In Bantam Books, Inc. v. Sullivan, 1963, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed. 2d 584, the Rhode Island Commission to Encourage Morality in Youth with power to recommend prosecutions, listed certain publications as objectionable and notified distributors of its adverse findings. The court held that this constituted suppression of the listed publications in violation of the Fourteenth Amendment, remarking that:

"There is no provision whatever for judicial superintendence before notices issue or even for judicial review of the Commission's determinations of objectionableness. The publisher or distributor is not even entitled to notice and hearing before his publications are listed by the Commission as objectionable." (372 U.S. p. 71, 83 S.Ct. p. 640.

and that:

"Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." (372 U.S. p. 70, 83 S.Ct. p. 639.)

The New York State courts have held that even a proceeding under § 22–a of the Code of Criminal Procedure, which, in effect, is a civil proceeding addressed to the publication itself, does not permit extensive restraints prior to judicial scrutiny on the issue of obscenity, and

---

4. Narrowly upholding § 22–a of the Code of Criminal Procedure supplementing the existing criminal provisions by authorizing limited injunctive remedies under closely defined procedural safeguards.

that where such prior seizure has been made the proceeding is infected with an unconstitutional taint. Stengel v. Smith, 4th Dep't 1963, 18 A.D.2d 458, 240 N.Y.S. 2d 200. Similarly, such a proceeding does not authorize an *ex parte* injunction. Tenney v. Liberty News Distributors, Inc., 1st Dep't 1961, 13 A.D.2d 770, 215 N.Y.S.2d 663. It would be illogical and inconsistent to suppose that prior restraints upon distribution of publications would be unconstitutionally tainted under a § 22–a civil proceeding, yet be free from such taint under a § 1144 conventional criminal proceeding. Section 1144 is a search and seizure section providing for seizure of not only objectionable material but also of equipment producing and vehicles transporting such material [5] and applies to seizures subsequent, as well as prior, to conviction. Warrants involving seizure of equipment or gambling paraphernalia, or the like, are not in the same category as warrants involving the seizure of publications subject to the protection of the First Amendment. The issuance of the latter warrants raises the question not only of the possession and use of objectionable material but also of the application of proper standards to determine that probable cause exists that such material is objectionable. Cf., Smith v. People of State of California, supra, and Marcus v. Search Warrants of Property, etc., supra, 367 U.S. p. 731, 81 S.Ct. 1708.

Here no adversary proceeding or judicial scrutiny or superintendence of any kind was required before the issuance of the warrant. In fact, Section 1144 permits a warrant to be issued by a magistrate "upon complaint that any person within his jurisdiction is offending against the provisions of this article, supported by oath or affirmation * * * ". Apparently the complainant determines whether or not the publication is obscene. Pursuant to this authority Anderson filed his complaint but he never saw a copy of the magazine and none was attached to the affidavit. Moreover, his complaint was not based upon his own information but it was based upon hearsay information of a woman worker who had read only portions of the magazine and who in one instance relied upon what was "reputed by fellow workers to be two females". This technique is the procedure that is generally followed by the District Attorney's office in Nassau County according to the affidavit of Henry P. Devine. A warrant based upon such a procedure leaves to the officer executing the warrant the determination of what is obscene, which technique was expressly condemned in Marcus. The Court finds that the State in applying Section 1144 in the manner above described, has used the power of search and seizure as a means of wholesale suppression of allegedly obscene and pornographic material prior to any adversary proceeding or a judicial scrutiny or superintendence so necessary for the protection of non-obscene material. Such application is a clear violation of the Fourteenth Amendment.

The defendant has urged that this Court abstain from taking jurisdiction of the case because the plaintiff has adequate remedies in the State court and accordingly contends that the proceeding should be stayed pending the determination of the criminal proceedings now before the State court. There is no merit to this contention. That the State law affords judicial remedies subsequent to seizure, would not save the statute. Such a proceeding was available and pending under the Missouri statute challenged in Marcus. "Moreover, the availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint which, in the field of free speech and press, we have held inadmissible." Cantwell v. State of Connecticut, 1940, 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213; see also McNeese v. Board of Education for Community Unit School District 187, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.

---

5. Section 1141–c of the New York Penal Law.

## III

As to the remedy, this Court will abstain from enjoining the prosecution of the criminal actions pending in the State courts and from granting plaintiff's request for declaration that Penal Law, § 1141 may not be constitutionally applied to this publication. The latter question is not before this Court and remains to be determined. However, the seizure of plaintiff's publication on April 24th under Section 1144 as applied, being a violation of the Fourteenth Amendment, which infected the entire proceeding, the plaintiff is entitled to an order (1) requiring the defendant to return all copies of the seized publication and (2) enjoining the defendant from any future interference with the distribution of the No. 32 issue of the Evergreen Review prior to a judicial determination of its obscenity. See Louisiana News Company v. Dayries, E.D.La.1960, 187 F.Supp. 241; Stengel v. Smith, supra. The remaining claims set forth in the complaint and in 1(b) of defendant's motion to dismiss the complaint are hereby remanded to Judge Rosling for determination. See 3 Moore, Federal Practice § 18.07[2].

Settle order on two days' notice.